UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ALBERONYS CUEVAS, on behalf of himself and all
other similarly situated persons,

                                Plaintiff,

        -against-

CITIZENS FINANCIAL GROUP, INC. and RBS
CITIZENS, N.A. (d/b/a Citizens Bank),

                           Defendants.
-----------------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 10-CV-5582(FB)(RML)

*Appearances*:
*For the Plaintiff*:
BRENDAN J. DONELON, ESQ.
Donelon, P.C.
802 Broadway, 7th Floor
Kansas City, Missouri 64105
PETER WINEBRAKE, ESQ.
The Winebrake Law Firm, LLC
Twining Office Center, Suite 211
715 Twining Road
Dresher, PA 19025

*For the Defendant*:
ELISE M. BLOOM, ESQ.
BRIAN J. GERSHENGORN, ESQ.
JACQUELINE M. DORN, ESQ.
Proskauer Rose, LLP
Eleven Times Square
New York, NY 10036

**BLOCK, Senior District Judge:**

Plaintiff Alberonys Cuevas brings this putative class action, under Federal Rule of Civil Procedure 23, against defendants Citizens Financial Group, Inc. and Citizens N.A. Plaintiff and the putative class members worked as Assistant Bank Managers ("ABMs") at defendants' Citizens Bank locations in New York State. Plaintiff claims that defendants violated the New York Labor Law, Article 19, §§ 650 *et seq.* ("NYLL") by classifying all ABMs as exempt from the state law's overtime requirements.[1] Defendants oppose class certification. For the reasons set forth below, the motion for class certification is granted.

**I**

---

[1] Plaintiff has satisfactorily averred that the Court has diversity jurisdiction pursuant to the Class Action Fairness Act of 2005, because a member of the proposed class is a citizen of a different state than one of the defendants and the amount in controversy exceeds $500,000,000. *See* 28 U.S.C. § 1332(d). Defendants do not dispute that the Court has jurisdiction.

Defendants operate approximately 230 Citizens Bank branches located in New York State. Approximately 107 of those branches are classified as "traditional," meaning they are freestanding bank establishments, and the remainder are "in-store," which are banks located within another retailer, such as a supermarket.  Most branches, regardless of type, employ one Branch Manager ("BM"), who reports to a Regional Manager, and one or two ABMs, who report to the BM.  Defendants classify all BMs and ABMs as exempt from the NYLL overtime pay mandate.  Branches also employ bankers, tellers, teller managers, head tellers, and senior tellers, all classified as non-exempt employees because their positions do not have supervisory or discretionary authority.  Cuevas worked as an ABM at the Freeport, New York in-store Citizens Bank branch from March 23, 2009, through December 19, 2009.

## II

To succeed on a motion for class certification, the plaintiff must establish, by a preponderance of the evidence, that the prerequisites listed in Federal Rule of Evidence 23(a) and one part of Rule 23(b) are satisfied.  *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008).  A district court evaluating a motion for class certification must conduct a "rigorous analysis," assessing "all of the relevant evidence admitted at the class certification stage" to "determine whether each Rule 23 requirement has been met."  *In re Initial Public Offerings Securities Litig.*, 471 F.3d 24, 29, 42 (2d Cir. 2006).

The Rule 23(a) prerequisites are: "(1) the class is so numerous that joinder of all members is impracticable;[2] (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  Plaintiff seeks certification under Rule 23(b)(3), which states that a class may be certified if "questions of law or fact

---

[2] Defendants concede that plaintiff can satisfy the numerosity requirement of Rule 23(a)(1).

common to class members predominate over any questions affecting only individual members, and. . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

As a preliminary matter, plaintiff calls attention to a recent Northern District of Illinois case certifying a class nearly identical to the proposed class here: current and former ABM employees of Charter One bank branches located in Illinois who claimed that defendants unlawfully classified them as exempt from federal and state overtime requirements. *See Ross v. RBS Citizens, N.A.*, 2010 WL 3980113, at *2 (N.D. Ill. 2010). The Seventh Circuit affirmed the district court decision, noting that "the glue holding together the [ABM class] is based on the common question of whether an unlawful overtime policy prevented employees from collecting lawfully earned overtime compensation." *Ross v. RBS Citizens, N.A.*, 667 F.3d 900, 910 (7th Cir. 2012). Although this court is not bound by the decisions of the Northern District of Illinois and the Seventh Circuit, the reasoning found in this comparable class certification provides guidance here.

### III

Plaintiff defines the proposed class as follows: "All [ABMs] employed at Citizens Bank retail branches in the state of New York during any workweek since December 1, 2004 who were paid a salary and classified by Defendants as exempt from [NYLL's] overtime pay mandates." Compl. ¶ 33.

Defendants oppose certification of the class for the following reasons: (1) plaintiff cannot satisfy the Rule 23(a)(2) commonality requirement because actual ABM job duties varied from one branch location to another and individual proof would be required for each class member; (2) common questions do not "predominate" under Rule 23(b)(3) because ABM daily activities varied; (3) a class action is not a superior method of adjudicating the controversy; (4) Cuevas 's claims and defenses are not typical of the class, nor is he capable of adequately protecting the interests of the class because he lacks credibility.

**A. Commonality**

The Rule 23 commonality prerequisite "requires the plaintiff to demonstrate that the class members have suffered the same injury.  This does not mean merely that they have all suffered a violation of the same provision of law."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ("*Dukes*").  Class members' claims must "depend upon a common contention," which "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke."  *Id.*

Defendants argue that there is no "common contention" because the record shows that "actual job duties vary from ABM to ABM and branch to branch, and proof specific to each ABM will be required" to determine whether ABMs were properly categorized as exempt.  Def's Mem. of Law at 18.  In support of that contention, defendants cite declarations submitted by potential class members describing their daily activities.  Several ABMs, for example, attested that they had been active in interviewing and hiring branch employees, and that BMs could "delegate managerial duties" to ABMs.  *See* Def's Mem. of Law at 9-10; Doggett Decl. ¶ 9.

Contrary to defendants' arguments, recent cases have held that class certification is appropriate where "the crux of [the] case is whether. . . company-wide policies, as implemented, violated Plaintiffs' statutory rights," regardless of some variation among the daily duties of class members.  *Youngblood v. Family Dollar Stores, Inc.*, 2011 WL 4597555, at *4 (S.D.N.Y. 2011); *see also Myers v. Hertz* Corp., 624 F.3d 537, 549 (2d Cir. 2010); *Morris v. Affinity Health Plan, Inc.*, 2012 WL 1608644, at *2 (S.D.N.Y. 2012); *Espinoza v. 953 Assoc. LLC*, 2011 WL 5574895, at *12 (S.D.N.Y. 2011); *Han v. Sterling Nat. Mortg. Co., Inc.*, 2011 WL4344235, at *4 (E.D.N.Y. 2011).  Accordingly, "commonality is not defeated because some individualized proof may be necessary to assess whether defendants properly deemed the proposed class exempt."  *Han*, 2011 WL4344235 at *4.

Plaintiff refers to documents that describe the duties of the ABM position, including the ABM Job Description, the "Minimum Performance Expectations" for ABMs, the "Manager Learning Path" training policies, the "Policy Exception Grid" limiting ABM authority to deviate from company-wide policies, and the ABM performance evaluations.  Pl's Mem. of Law at 6-11.  These documents are "unquestionably probative of [ABMs'] actual duties. Thus, interpreting whether the duties described in th[ese] document[s] are consistent with either the 'executive' or 'administrative' exceptions is a relevant question common to all class members."  *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156-57 (S.D.N.Y. 2008) (holding that whether assistant store managers were exempt from NYLL overtime requirements was a question of law common to all class members' claims for relief); *see Ross*, 2010 WL 3980113 at *3 (A "policy applicable to a class of employees is enough to establish a common question of fact or law.").

Although the record shows some differences among the exact daily activities of ABMs at different bank branches, defendants fail to submit any evidence showing that the company-wide policy documents upon which plaintiff relies are not an accurate representation of the general ABM responsibilities.  Accordingly, the question of whether ABM duties, as defined in defendants' company-wide policies, support an "exempt" classification under the NYLL is a common issue capable of classwide resolution.

**B. Predominance**

Defendants also argue that plaintiff cannot satisfy the predominance prerequisite of Rule 23(b)(3) because "the evidence required for each ABM Class member to prove liability would not be predominantly common, but predominantly individual."  Def's Mem. of Law at 20.  Specifically, defendants contend that the policy of uniformly exempting all ABMs from the NYLL overtime

requirements is not sufficient evidence that common issues predominate, and that resolution of class members' claims would require individualized proof.

Defendants are correct, and plaintiff concedes, that "the existence of a blanket exemption policy, standing alone, is not itself determinative of the 'main concern in the predominance inquiry: the balance between individual and common issues.'" *Myers*, 624 F.3d at 549. Although the blanket exemption policy is not sufficient on its own, however, the policy is relevant to the predominance inquiry and should be considered alongside other company-wide policies. *See id.* at 549 (A blanket exemption policy "suggests the employer believes some degree of homogeneity exists among the employees, and is thus in a general way relevant to the [predominance] inquiry here"); *Youngblood*, 2011 WL 459755 at *5 ("[S]uch a blanket determination is evidence that differences in the store manager position, to the extent that there are any, are not material to the determination of whether the job is exempt from overtime requirements."). Thus, although defendants' blanket exemption policy for ABMs is not alone determinative for Rule 23(b)(3) predominance, it is certainly relevant to the court's decision and weighs in favor of class certification.

Further, as has been discussed with respect to commonality, the existence of some variation among the daily activities of putative class members does not automatically show that individual issues predominate. In light of the clearly established company-wide policies defining the primary job duties of all ABMs, along with the blanket exemption policy, "there is no evidence that [differences among class members] are of such a magnitude as to cause individual issues to predominate." *Damassia*, 250 F.R.D. at 160. "Where, as here, there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging their classification as exempt, despite arguments about 'individualized' differences in job responsibilities." *Id.*; *see Ross,* 2010 WL 3980113, at *7 ("[T]he criteria used to determine whether employees can be

classified as [exempt] do not require an individualized employee-by-employee inquiry. . . as to the day-to-day tasks performed."). Accordingly, the common issues predominate and the proposed class is "sufficiently cohesive" to warrant class certification. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

## C. Superiority

Factors relevant to the Rule 23(b)(3) superiority requirement include: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action." Fed R. Civ. P. 23(b)(3). "At bottom, the superiority analysis requires (1) consideration of the alternative methods of adjudication available for the claims, (2) a comparison of the fairness to all whose interests are implicated between any alternative methods and a class action, and (3) a comparison of the efficiency of each method in adjudicating the claims." *Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 116 (E.D.N.Y. 2011).

Defendants argue that a class action lawsuit is not a superior mechanism for adjudicating class members' claims because the "wide discrepancies in class members' job duties" makes a class action unmanageable and inappropriate, and suggest that individualized issues would lead to a "series of mini-trials." Def's Mem. of Law at 28-29. Defendants have not convincingly argued, however, that there are dramatic variations among class members' job duties that would render a class action unwieldy. Nor have defendants submitted any arguments or additional evidence relevant to the factors enumerated in Rule 23(b)(3).

In contrast, plaintiff argues that (1) individual class members would not have an interest in controlling the prosecution of separate actions because damages would be relatively small for individual lawsuits, and there is no need to individually tailor trial tactics because all ABMs are making the same

claim; (2) no other litigation has been begun by a class member regarding the NYLL claims at issue; and

(3) concentration of all claims in the Eastern District of New York is desirable because all potential class

members work in New York and a significant number of putative class members reside in this district.

Defendant does not dispute those contentions.  Plaintiff also argues that a class action would be both fair

and efficient because individual lawsuits might "inundate" courts with identical misclassification claims,

and that many putative class members might not have the financial means to bring individual claims.  *See*

*D'Lauro v. GC Services Ltd. P'ship*, 68 F.R.D. 451, 458 (E.D.N.Y. 1996) ("It is appropriate for the court

to consider the inability of the poor or uninformed to enforce their rights and the improbability that large

numbers of class members would possess the initiative to litigate individually.").

   Accordingly, a class action is the superior method of resolving the putative class members'

claims.  The proposed class action will "achieve economies of time, effort, and expense, and promote

uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing

about other undesirable results."  *Myers*, 624 F.3d at 547.

**D. Typicality and Adequacy**

   Finally, defendants argue that Cuevas is an inappropriate class representative because his

claims are not typical of all other class members, and because he is not in a position to adequately protect

the interests of the class members, under Rules 23(a)(3) and (4).  A class representative's claims are

typical "when each class member's claim arises from the same course of events, and each class member

makes similar legal arguments to prove the defendant's liability."  *Marisol A. v. Giuliani*, 126 F.3d 372,

376 (2d Cir. 1997).  To determine whether a named plaintiff will be an adequate class representative,

courts inquire whether: "(1) plaintiff's interests are antagonistic to the interest of other members of the

class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *Baffa v.*

*Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

   Defendants combine their discussion of the typicality and adequacy prerequisites,

submitting the following arguments: (1) that Cuevas's claim is different from that of other class members because he does not assert liability for the time period in which he served as an "acting" BM; (2) Cuevas's job duties were different from ABMs whose primary duties were supervisory; (3) Cuevas seeks only money damages; and (4) Cuevas has demonstrated a lack of credibility that would subject him to unique defenses because he offered inconsistent answers about his work hours and he submitted an "inaccurate resume" to a prospective employer.  Def's Mem. of Law at 32.

Contrary to defendants' criticisms of Cuevas, the record shows that his misclassification claims share the same essential elements and legal arguments as those of the other putative class members because he worked as an ABM at a New York branch of Citizens Bank and, pursuant to company policy, was classified as exempt from NYLL overtime requirements. *See Caridad v. Metro-North Commuter R.R.*, 191 F.3d 144, 155 (S.D.N.Y. 2002) (Typicality "does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the same class.").  With respect to the typicality and adequacy determinations, Cuevas's interests and legal arguments in this proposed class action are not adverse to those of other putative class members.

As has already been discussed, defendants overstate the magnitude of the differences between ABMs at various branch locations.  Plaintiff concedes that class members do not seek damages for any overtime worked by class members while serving as "acting" or "interim" BMs.  Thus, the fact that some ABMs served as acting BMs at some point during the class period  has no bearing on the common legal arguments for this case and may be dealt with at the damages stage if necessary.  *See Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 345-46 (S.D.N.Y. 2004) (holding that "individualized damages inquiries do not bar certification.").

In addition, Cuevas's stated preference for money damages is reasonable, because he is not

9

currently employed by defendants and would not benefit from a reclassification of current ABMs.  It does not weigh against class certification, as there is no evidence that Cuevas would reject a settlement offer that included non-monetary relief.  *See Ross*, 2010 WL 3980113 at \*5 ("While Ross testified that she would not accept a settlement if the class received money but she did not, this does not mean she would sell out the class for her own benefit but rather that she would seek some sort of benefit for both the class and herself, which is natural in the context of a class action.").

Finally, defendants' attacks on Cuevas's credibility are irrelevant; they do not render him "vulnerable to unique defenses and sharp attacks relevant to the issues in the litigation," and have no bearing on his ability to serve as an adequate class representative.  *German v. Federal Home Mortg. Corp.*, 168 F.R.D. 145, 155 (S.D.N.Y. 1996); *see Cromer Finance Ltd. v. Berger*, 205 F.R.D. 113, 125 (S.D.N.Y. 2001) (rejecting argument that "contradictions" in class representative depositions made him "so lacking in credibility that [he was] likely to harm [the] case.").  Cuevas stated in his complaint and declaration that he worked 50-55 hour weeks; at his deposition he stated that he worked 40-48 hour weeks.  This discrepancy is not so egregious that it casts serious doubt on Cuevas's integrity.  Nor does any puffery contained in Cuevas's resume"threaten to become the focus of the litigation" or jeopardizes the interests of absent class members.  *Cromer*, 205 F.R.D. at 125.

In addition, defendants do not question proposed class counsels' qualifications, but argue that they are inadequate for this case because they selected an improper named plaintiff and did not have Cuevas review the allegedly inaccurate complaint before it was filed.  Plaintiff counters that defendants' allegations are factually incorrect.  In any event, defendants have not submitted sufficient evidence to support those contentions.  Donelon, P.C. and the Winebrake Law Firm have been appointed class counsel for dozens of wage and hour class claims across the country, including the similar *Ross* case from the Northern District of Illinois.  Thus, plaintiff has established that proposed class counsel are "qualified, experienced and generally able to conduct the litigation." *In re Drexel Burnham Lambert Group, Inc.*, 960

F.2d 285, 290 (2d Cir. 1992).

## CONCLUSION

For the foregoing reasons, plaintiff's motion for class certification is granted.  The Court

certifies the following class under Federal Rule of Civil Procedure 23(a) and (b)(3):

> All Assistant Bank Managers employed at Citizens Bank retail branches in
> the state of New York during any workweek since December 1, 2004 who
> were paid a salary and classified by Defendants as exempt from the New
> York Labor Law's overtime pay mandates.

The Court approves Donelon, P.C. and the Winebrake Law Firm, L.L.C. as class counsel

and Alberonys Cuevas as class representative.

**SO ORDERED.**

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
May 21, 2011

11