IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALBERONYS CUEVAS, on behalf of himself and all other similarly situated persons,<br><br>     Plaintiffs,<br><br>    v.<br><br>CITIZENS FINANCIAL GROUP, INC., and RBS CITIZENS, N.A. (d/b/a Citizens Bank)<br><br>     Defendants. | :<br>:<br>:<br>: CIVIL ACTION<br>:<br>: NO. CV-10-5582<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## MEMORANDUM IN SUPPORT OF *UNOPPOSED* MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT STIPULATION

COME NOW the Plaintiffs in the above captioned matter, and the Plaintiffs in the following five matters recently transferred to this Court and consolidated under this case number:

***Ross, et al. v. RBS Citizens, N.A., et al.*** (E.D.N.Y. No. 13-cv-4226-FB-RML) (hereinafter "*Ross*")

***Martin, et al. v. Citizens Financial Group, Inc., et al.*** (E.D.N.Y. No. 13-3871-FB-RML) (hereinafter "*Martin*")

***Bell, et al. v. Citizens Financial Group Inc., et al.*** (E.D.N.Y. No. 13-cv-4073-FB-RML) (hereinafter "*Bell*");

***Lyons, et al. v. Citizens Financial Group, Inc., et al.*** (E.D.N.Y No. 13-cv-3919-FB-RML) (hereinafter "*Lyons*"); and

***Watson v. Citizens Bank of Pennsylvania*** (E.D.N.Y. No. 13-cv-3917-FB-RML) (hereinafter "*Watson*");

and hereby set forth this Memorandum in Support of the Plaintiff's *Unopposed Motion for Preliminary Approval of Settlement Stipulation* (*Cuevas* Doc. 83). The Defendants have reviewed the motion and supporting memorandum and do not oppose the requests made herein.

TABLE OF CONTENTS

I.     Preliminary Statement..................................................................................................3

II.    Factual & Procedural Background.............................................................................4

       A.     History & Factual Background ...............................................................4
       B.     Settlement Negotiations ..........................................................................8

III.   Summary of the Settlement Terms...........................................................................8

       A.     Settlement Fund ........................................................................................8
       B.     Releases......................................................................................................8
       C.     Eligible Employees...................................................................................8
       D.     Allocation Formula ..................................................................................9
       E.     Attorneys' Fees & Litigation Costs.....................................................10
       F.     Enhancement Awards.............................................................................10
       G.     Settlement Claims Administrator.........................................................12
       H.     Notice and Claim Process .....................................................................12

IV.    Settlement Procedure ..............................................................................................13

V.     Argument ...................................................................................................................13

       A.     Approval of the Rule 23 Class Claims Under *Cuevas, Ross, Lyons* and
              *Watson* is Appropriate...........................................................................13
       B.     Preliminary Certification of the *Cuevas* and *Watson* Rule 23
              Classes is Appropriate............................................................................16
              1.     Rule 23(a)(1) Numerosity has Been Met ...................................17
              2.     Rule 23(a)(2) Commonality has Been Met ................................18
              3.     Rule 23(a)(3) Typicality has Been Met ......................................19
              4.     Rule 23(a)(4) Adequacy has Been Met ......................................20
              5.     Rule 23(b)(3) Requirements Have Been Met ............................20
                     a.    Common Issues Predominate.........................................21
                     b.    A Class Action is Superior to Other Methods ..................22
       C.     Approval of the Settlement for the FLSA Collective Classes is Appropriate............23
       D.     Plaintiffs' Counsel Should be Appointed Class Counsel........................24
       E.     The Proposed Class Notices are Appropriate ........................................25

## I.   **Preliminary Statement**

The Plaintiffs are seeking a preliminary approval for a Settlement Stipulation (*Cuevas* Doc.  83) that was finalized on September 15, 2013 and subsequently executed by the parties. Including *Cuevas*, this settlement involves the six wage and hour class/collective actions listed above that were brought against the same Defendants (all six cases collectively referred to as the "Wage-Hour Lawsuits").[1]  All of these class/collective actions involve retail banking center employees making a claim for overtime pay under federal and state laws.  The Plaintiffs and Defendants in the six cases are represented by the same respective counsel.  On July 30, 2013, the five cases referenced above were consolidated with *Cuevas* (Doc. 81) in order to present to this Court the Settlement Stipulation to be reviewed for preliminary approval.

Subject to the Court's approval, the Parties have resolved all six class/collective claims for a gross settlement amount of $11,501,500.00.  The settlement regarding these six cases covers four Rule 23 classes of Assistant Branch Managers ("ABMs"), one collective class under the § 216(b) of the Fair Labor Standards Act ("FLSA") of ABMs, one Rule 23 hourly class of employees, and one §216(b) hourly collective class of employees.

The Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Settlement Stipulation; (2) in connection with the settlement process, provisionally certify the proposed settlement classes under Rule 23(b)(3) in *Cuevas* and *Watson*;[2] (3) appoint Donelon, P.C. and Winebrake & Santillo, L.L.C. as class counsel over the consolidated cases; (4) appoint class representatives in the *Cuevas* and *Watson* matters;[3] (5) approve the proposed Class Notices to the Class Members attached as Exhibits A through E to the Settlement Stipulation; and (6) set a date for a fairness hearing and final approval.

---

[1] Any capitalized terms in this memorandum adopt the definitions of these terms as set forth in Section 1 of the Settlement Stipulation unless otherwise stated.

[2] As discussed more herein, the Rule 23 class claims in *Ross* and *Lyons* do not need provisional certification since they were already certified by the transferring courts.

[3] As discussed more herein, Rule 23 class representatives were already designated in *Ross* and *Lyons* by the transferring courts.

## II.   Factual & Procedural Background

**A.     History & Factual Background:**

As previously stated, this global settlement involves not only the *Cuevas* matter, already before this Court, but five other class/collective claims against the same Defendants asserting the same or similar claims.  The five cases' claims and history are summarized as follows:

***Ross*** was filed on February 14, 2009 in the Northern District of Illinois.  This case was brought by ABMs and hourly employees working at Defendants "Charter One" banking centers located in Illinois, Indiana, Michigan, and Ohio.  There are four classes of employees in this case: (i) the Fair Labor Standards Act ("FLSA") collective class of hourly employees asserting off-the-clock overtime claims; (ii) the FLSA collective class of ABMs asserting misclassification overtime claims; (iii) Illinois Rule 23 hourly employee class members asserting off-the-clock overtime claims under the Illinois Minimum Wage Law (IMWL); and (iv) Illinois Rule 23 ABMs asserting misclassification overtime claims under the IMWL.  On January 14, 2010, the court granted conditional certification under § 216(b) of the FLSA.  On October 8, 2010, the court granted Rule 23 certification for the IMWL classes.  *Ross v. RBS Citizens, N.A.*, 2010 WL 3980113 (N.D.Ill. Oct. 8, 2010).  The Defendants obtained leave to appeal to the Seventh Circuit. On January 27, 2012, the Seventh Circuit upheld the district court's certification.  *Ross v. RBS Citizens, N.A.*, 667 F.3d 900 (7th Cir. 2012).  On August 1, 2012, the Defendants filed a petition for writ of certiorari with United States Supreme Court.  On April 1, 2013, the Supreme Court issued a decision granting Defendants' petition for writ of certiorari; vacating the Seventh Circuit's January 27, 2012 opinion; and remanding the matter to the Seventh Circuit in light of *Comcast Corp. v. Behrend*, ___ U.S. ___, 133 S. Ct. 1426 (2013).  On June 4, 2013, the Seventh Circuit granted the parties request to stay all proceedings pending approval of this Settlement. There are 520 FLSA hourly class members; 200 FLSA ABM class members; 1,511 hourly Rule 23 class members; and 238 ABM Rule 23 class members.  On July 9, 2013, this matter was

4

transferred to this Court, and it was assigned case no. 13-4266-FB-RML.  On July 30, 2013, it was consolidated with *Cuevas*.

*Martin* was filed on January 21, 2010 in the Eastern District of Pennsylvania.  This was an FLSA collective class action brought by hourly employees working at Defendants' "Citizens Bank" retail branches located in nine states throughout the northeast.  These employees were making a claim for off-the-clock overtime.  On December 14, 2010, the court entered a stipulated order granting conditional class certification under § 216(b) of the FLSA.  There are 846 individuals who consented to join this case.  On March 27, 2013, the district court granted the Defendants' motion to decertify this collective class and decertified the collective class.  *Martin v. Citizens Financial Group, Inc.*, 2013 WL 1234081 (E.D.Pa. Mar. 27, 2013).  On July 11, 2012, *Martin* was transferred to this Court, and it was assigned case no. 13-3871-FB-RML.  On July 30, 2013, it was consolidated with *Cuevas*.  Despite this decertification, these opt-in class members will be participating under the terms of the Settlement Stipulation.

*Bell* was filed on March 10, 2010 in the Western District of Pennsylvania.  This is a collective class action under the FLSA on behalf of ABMs working at Defendants' "Citizens Bank" retail branches in nine states throughout the northeast.  These ABMs claimed that they were misclassified and owed overtime under the FLSA.[4]  On September 2, 2010, the court granted the Plaintiffs' motion for conditional certification.  *Bell v. Citizens Financial Group, Inc.*, 2010 WL 3463300 (W.D.Pa. Sept. 2, 2010).  After notice and return of consent forms, an estimated 403 ABMs joined the class in a timely fashion.  On June 28, 2012, the court denied the Defendants' motion to decertify this class.  Starting on April 2, 2013, the parties began a three week jury trial.  On April 19, 2013, the jury returned a verdict for the Defendants finding

---

[4] In the *Bell* matter, the Plaintiffs had also brought Rule 23 class claims for Pennsylvania and Massachusetts ABMs under each states respective law.  On June 8, 2011, the *Bell* court denied the plaintiffs' motion for Rule 23 certification.  *Bell v. Citizens Financial Group, Inc.*, 2011 WL 2261117 (W.D.Pa. June 8, 2011).  The reason for denial was collective and Rule 23 class claims could not be brought in the same action.  The Third Circuit, in a later and different case, rejected this logic.  Regardless, the *Bell* court's denial on these grounds led to the filing of the *Watson* and *Lyons* matters described herein.

that the ABMs were exempt under the FLSA.  On May 15, 2013, the plaintiffs filed their notice of appeal.  After staying all proceedings, on June 17, 2013, the Third Circuit Court of Appeals stayed the appeal and transferred this matter to this Court.  On July 16, 2013, the Eastern District of Pennsylvania transferred the case file to this Court, and it was assigned case no. 13-cv-4073-FB-RML.  On July 30, 2013, it was consolidated with *Cuevas*.  Despite this loss at trial, the opt-in class members will be participating under the terms of the Settlement Stipulation.

*Lyons* was filed on January 5, 2011.  This is a Rule 23 class action on behalf of ABMs working at Defendants' "Citizens Bank" retail branches in Massachusetts under the Massachusetts Wage Act.  These ABMs claimed that they were misclassified and owed overtime. On July 7, 2012, the court granted Rule 23 certification.  *Lyons v. Citizens Financial Group, Inc.*, 2012 WL 5499878 (D.Mass. Nov. 9, 2012) (revised opinion per request of First Circuit). After notice was sent, there are 505 class members in this case.[5]  This matter was stayed, and on July 12, 2013 this case was transferred to this Court and assigned case no. 13-3919-FB-RML.  On July 30, 2013, it was consolidated with *Cuevas*.

*Watson* was filed on October 21, 2011 in the Court of Common Pleas for Philadelphia County.  In this matter, ABMs working for Defendant Citizens Bank of Pennsylvania brought a class action claim for misclassification and denial of overtime pay under Pennsylvania's wage and hour laws.  There are around 800 class members.  Prior to certification, and to facilitate this settlement, this matter was stayed and then removed by Defendants to the Eastern District of Pennsylvania.  On July 11, 2013, this case was transferred to this Court and assigned case no. 13-cv-3917-FB-RML.  On July 30, 2012, it was consolidated with *Cuevas*.  As part of the settlement, Plaintiffs seek certification of the *Watson* class for settlement purposes only, and Defendants do not object to that request.

---

[5] While there were 555 actual class members in *Lyons*, ABMs who opted into *Bell*, and who were also included in the *Lyons* Rule 23 class, will be paid as *Bell* class members under the Settlement Stipulation. Therefore, the remaining class members number 505.

Regarding *Cuevas*, on May 22, 2012, this Court granted Rule 23 certification on behalf of ABMs working at Defendants' "Citizen Bank" retail branches located in New York. *Cuevas v. Citizens Financial Group, Inc.*, 2012 WL 1865564 (E.D.N.Y. May 22, 2012). There are around 800 class members. The Defendants appealed this matter to the Second Circuit. On May 29, 2013, the Second Circuit issued a summary order vacating this Court's May 22 order for further consideration of commonality and predominance. The Parties include these class members under the terms of the Settlement Stipulation.

As demonstrated above, this litigation was very intense and has covered close to four years. This included discovery occurring across the country, extensive motion practice, expert witnesses, voluminous document productions, extensive appellate work, and a three week jury trial in *Bell*. Needless to say, the Parties have become well versed in the facts, claims, law, and exposure regarding all of these cases.

The ABMs working at Defendants "Charter One" and "Citizens Bank" branches are all asserting the same claims, albeit under the FLSA and various state laws. The ABMs assert that they are not paid overtime for hours worked in excess of forty per work week. This fact is uncontroverted by the Defendants. However, the Defendants assert that they are exempt from overtime pay under the "executive" and/or "administrative" exemptions of the FLSA (or their related counterparts under the various state laws).

The hourly employees (who have Teller or Banker job titles) at Defendants' "Charter One" and "Citizens Bank" branches are all asserting that they were required to perform work off-the-clock, and in turn, denied overtime pay. These employees claim that this policy is enforced by Defendants in the following ways: (i) they are required to not report all hours worked; (ii) when they do report overtime hours, on occasions, Defendants alter their time records lowering this amount of time; (iii) they receive "comp time" in lieu of overtime pay; and (iv) they are required to perform work during unpaid meal breaks. The Defendants deny these allegations and claim that their employees are paid for all hours worked as required by law.

7

**B.     Settlement Negotiations:**

The parties began settlement negotiations for all of these cases at the end of the first week of trial in the *Bell* matter this past April.  After a weeks' worth of negotiations, the parties were not able to reach a resolution.  After the *Bell* verdict, the parties continued their negotiations.  In order to further these negotiations, the parties retained an experienced wage and hour mediator – attorney Michael Dickstein.  On May 28, 2013, the parties spent 14 hours mediating this matter with Mr. Dickstein and were able to reach a tentative agreement and execute a Memorandum of Understanding.  The Parties executed the Settlement Stipulation which is now presented to this Court for preliminary approval.

### III.     Summary of the Settlement Terms

**A.     The Settlement Fund:**

Under the terms of the Settlement Stipulation, Defendants have agreed to pay up to a gross settlement fund of $11,501,500.00 to resolve the claims in these six class/collective action matters against Defendants.  This fund will cover Settlement Class Members' payments, Attorneys' Fees, Litigation Costs, and Enhancement Awards.[6]

**B.     Releases:**

Under the terms of the Settlement Stipulation, Settlement Class Members will be waiving all wage and hour related claims under federal, state, and local laws.[7]  The details of these released claims are set forth in Section 15 of the Settlement Stipulation.

**C.     Eligible Employees:**

This Settlement covers the "Settlement Classes" as defined in the Settlement Stipulation, Section 6.

---

[6] Capitalized terms in this Memorandum will have the same definitions as applied in the Global Settlement Stipulation (*see* Section 1 of Settlement Stipulation).

[7] Unless they affirmatively opt-out in the *Ross, Cuevas, Lyons* or *Watson* Rule 23 claims.

**D.    Allocation Formula:**

After the deduction of Attorneys' Fees, Litigation Costs, and Enhancement Awards, a

$7,186,959.07 Net Settlement Fund remains for distribution to the estimated 5827 Class

Members.  The settlement distribution formula is set forth in Section 7 of the Settlement

Stipulation.  This allocation takes into account the duration of employment and compensation

paid to each class member within their respective group in determining their respective payout.

Since the members of the *Bell* class lost their claims at trial, the value of their settlement

payments were greatly reduced compared to the ABM class members in *Ross, Lyons, Watson*

and *Cuevas*.  In essence, these persons stood to get paid nothing unless the Plaintiffs succeeded

in what would have been a difficult appeal.  In addition, the members of the *Martin* class had

their payments reduced compared the hourly employees in the *Ross* FLSA hourly class and *Ross*

Rule 23 hourly class.  Again, the *Martin* class members are part of a decertified case, who would

be left to bring over 800 individual claims on their own.

The funding for these groups of employees from the Net Settlement Fund is broken down

as follows:

| Class | Amount from Net Settlement Fund | Number of Class Members | Average Payout |
|---|---|---|---|
| *Ross, Cuevas, Lyons* and *Watson* Rule 23 ABM class | $4,599,653.81 | 2348 | $1,958.97 |
| *Bell* FLSA ABM class | $143,739.18 | 403 | $356.67 |
| *Ross* FLSA Hourly Class | $503,087.14 | 519 | $969.34 |
| *Ross* FLSA ABM class | $431,217.54 | 200 | $2,156.09 |
| *Ross* Rule 23 Hourly Employee class | $1,078,043.86 | 1511 | $713.46 |
| *Martin* FLSA Hourly Employee Class | $431,217.54 | 846 | $509.71 |

Under these terms, the average pay-out to an ABM is roughly $2000.[8]  A review of a

significant sampling of data for ABMs reflects a medium number of weeks employed in this

---

[8] This does not include the *Bell* plaintiffs who lost at trial with their payout greatly reduced due to this
fact.

position to be 59.  This would create an average per week payout of $33.  Under a model for overtime damages for salaried employees, hours over forty per work week are often paid at a 0.5 overtime rate.  Given the average hourly rate of pay for ABMs, the $33 per week amount represents roughly four hours of overtime compensation per week for these Class Members. This is a significant payout.

Under these terms, the average pay-out to the hourly class members is $850.  A review of a significant sampling of data for the hourly class members reflect a medium number of weeks employed in this position to be 73.  The average hourly pay is $13.92.   On average, testimony reflected that in roughly 60% of weeks worked, the hourly employees claimed off-the-clock work in excess of forty hours.  In turn, there is a 43 week average where compensation was owed for alleged off-the-clock work.  Given the average hourly rate of pay, the $19.76 per week payout for these 43 weeks is close to one hour of overtime pay per week.  Again, given the circumstances of this litigation, this is significant relief.

**E.      Attorneys' Fees & Litigation Costs:**

Plaintiffs' counsel is seeking reimbursement of $527,561.39 for Litigation Costs and $3,657,979.54 (one-third of the Gross Settlement Fund, after deduction of Litigation Costs) for all attorneys' fees in this matter (*see* Section 9 of the Settlement Stipulation).  The Defendants are not opposing this request.  Plaintiffs' counsel will be filing a separate unopposed motion before the final fairness hearing date seeking approval for their Attorneys' Fees and Litigation Costs.

**F.      Enhancement Awards:**

In recognition for filing these class action lawsuits, assisting counsel in the litigation of these matters, participating in discovery including depositions, and all other necessary actions in pursuing litigation against Defendants, the Plaintiffs will be seeking an Enhancement Award of $7500 for each of the ten named Plaintiffs who initiated the six cases at issue and $1500 for

thirty-six people who provided a deposition or testified at trial.[9]  The Named Plaintiffs and witnesses have made a significant investment of time and effort in this matter, including: (i) meeting with Class Counsel to discuss the factual allegations and legal theories and assisting in the preparation of the complaint; (iii) traveling to testify and missing work; and (iii) providing input and guidance during the negotiation and settlement process, including approving the settlement and signing the Settlement Stipulation on behalf of the Class.  All of these actions were necessary and essential in reaching this resolution.  All of these actions were for the benefit of the Class Members.

Courts frequently permit such awards in recognition of the work they performed on behalf of the class.  *Strougo v. Bassini*, 258 F.Supp. 2d at 263-264; *see also Mohney*, 2009 U.S. Dist. LEXIS 27899, at *18-19 (quoting *Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 200-01 (S.D.N.Y. 1997) ("The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (*e.g.,* factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery.")).  "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Courts routinely approve awards in the amounts sought here.  *See, e.g., Strougo v. Bassini*, 258 F.Supp. 2d at 263-264*; see also, e.g., Woo v. Home Loan Group, L.P.*, No. 07-CV-202, 2008 WL 3925854, at *6 (S.D. Cal. Aug. 25, 2008) ("The Court further approves a payment to the Class Representative . . . as an enhancement in the amount of $7,500 for the initiation of this action, services performed, and the risks undertaken . . ."); *Fulford v. Logitech, Inc.*, No. 08-

---

[9] Any person who was a named plaintiff is not eligible to receive the enhancement payment for testifying at trial or deposition.

cv- 02041, 2010 WL 807448, at *3 n.1 (March 5, 2010) (collecting cases awarding service payments ranging from $5,000 to $40,000); *In re Sorbates Direct Purchaser Antitrust Litig.,* 2002 WL 31655191, at *3 (N.D. Cal. Nov. 15, 2002) (approving $7,500 service awards).

**G.    Settlement Claims Administrator:**

The Plaintiffs have retained Class Action Administration, Inc. (CAA) to administer the claims and payments in Settlement Stipulation.  CAA has worked with Plaintiffs' counsel over the past three years in these Wage-Hour Lawsuits regarding notices, *etc.*  It is an experienced and qualified organization to administer a settlement of this size and scope and is already familiar with this litigation.  CAA has provided a "price-locked" cost of $65,500 to fully administrate this settlement as set forth in the Settlement Stipulation.

**H.    Notice and Claim Process:**

Within seven (7) days of the Court granting preliminary approval, the Notice and Claim Forms (Exhibits A – E to the Settlement Stipulation) will be sent to the Class Members by the Claims Administrator.  These Notice Packages will be sent via U.S. Mail first class postage prepaid.[10]  The Notice Forms fully inform each of the respective class members of his or her rights.  Class Members in the Rule 23 *Ross* ABM, *Ross* Hourly*, Cuevas, Lyons* and *Watson* classes will be informed of their rights to opt-out, and their rights to object to the settlement at the final fairness hearing.  In order to receive payment, all Class Members will have to submit a claim form.  Class Members in the FLSA *Martin, Ross,* and *Bell* matters will release their claims regardless of whether they file a timely claim form because they have already consented to be a member of these collective classes, and per the terms of their consent forms, bound by the decision of the Named Plaintiffs in those cases to resolve this matter under the terms of the Settlement Stipulation.  All claim forms, opt-out forms, and objections discussed above, are subject to a sixty (60) day return deadline.

---

[10] As the Court will see, Section 13 (d) – (e) of the Settlement Stipulation provides for a reminder post card mailing, and Skip-Trace searches for returned notices or for any class member who does not return a claim form.

Within twenty-one (21) days of the Effective Date of this Court's Final Approval Order approving the Settlement Stipulation, the Claims Administrator will mail the settlement checks to the Participating Class Members.

### IV.     Settlement Procedure

The Settlement Stipulation involves resolving both Rule 23 class action claims as well as collective action claims under § 216(b) of the FLSA.  The FLSA collective classes are already defined by persons who timely filed consent to join forms.  The Rule 23 classes have been defined in *Ross* and *Lyons* because notices were already sent and opt-out forms received.  The two remaining Rule 23 class actions (*Cuevas* and *Watson*) need to be granted preliminary certification by this Court in order for the notice of settlement to be sent.  With this Motion, and as part of the Plaintiffs request that the Court grant preliminary approval of the Settlement Stipulation, Plaintiffs request that this Court grant preliminary certification for the *Cuevas* and *Watson* classes under Rule 23(b)(3).

Regarding Rule 23 class action settlement procedures for the *Ross, Cuevas, Lyons* and *Watson* classes, there is a well-defined procedure.  Specific criteria for settlement approval in class action settlements include three steps: (1) preliminary approval of the proposed settlement after written submission of a motion, (2) dissemination of a court approved notice of settlement to all affected class members; and (3) a final settlement approval hearing at which class members may be heard regarding the settlement.  *See* F.R.Civ.P. 23(e); *see also Newberg*, §§11.22, *et seq.* (4th Ed. 2002).  This process safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests.

Regarding the FLSA collective action settlements for *Ross, Bell* and *Martin*, the only procedure necessary is for the Court to: (1) determine that the Settlement Stipulation addressing these class members is fair, just and reasonable; and (2) court approved dissemination of the notice of settlement to all affected class members.  As discussed in following section, the settlement of these Rule 23 and FLSA collective class claims should be approved by this Court.

13

## V.   Argument

**A.    Approval of the Rule 23 Class Claims Under *Cuevas, Ross, Lyons* and *Watson* is Appropriate:**

Since *Lyons* and *Ross* have already been certified as class actions under Rule 23(b)(3) in their respective courts before transfer,[11] this Court will only need to grant conditional Rule 23 certification for *Cuevas* and *Watson* to effectuate the Settlement Stipulation.

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context.") (internal quotations omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding pubic interest in settling class action litigation, and it should therefore be encouraged."). The approval of a proposed class action settlement is a matter of discretion for the trial court. *Churchill Village, LLC v. Gen. Elec. Co*, 361 F.3d 566, 575 (9th Cir. 2004*); Maywalt v. Parker & Parsely Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998). In doing so, courts should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974); *see also Mba v. World Airways, Inc.*, No. 09-0008-cv, 2010 U.S. App. LEXIS 5068, at *4 (2d Cir. Mar. 10, 2010).

---

[11] *See Ross v. RBS Citizens, N.A.*, 2010 WL 3980113 (N.D.Ill. Oct. 8, 2010); *Lyons v. Citizens Financial Group, Inc.*, 2012 WL 5499878 (D.Mass. Nov. 9, 2012).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Newberg on Class Actions,* § 11.25 (4th Ed. 2002).  In granting this approval, the court only needs to find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980).  "Fairness is determined upon review of the terms of the [settlement stipulation] and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005).  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotations omitted).  If the settlement was achieved through counsel's arm's-length negotiations, "[a]bsent fraud or collusion," "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007).

Here, after years of litigation by experienced wage and hour class counsel, the parties entered into an arms-length mediation session with one of the more experienced mediators in this field.  After fourteen hours of negotiations, a resolution was reached.  Given these factors, a heavy weight toward the presumption of procedural should be afforded by this Court.  There is certainly no evidence of fraud or collusion regarding this settlement.  Indeed, the years of hard fought and contentious litigation demonstrates the opposite.  As discussed below, the terms and benefits to the class members are certainly fair.

The Second Circuit in *City of Detroit v. Grinnell Corp.* provided the analytical framework for evaluating the substantive fairness of a class action settlement. 495 F.2d 448 (2d Cir. 1974).  The "*Grinnell* factors" guide district courts in this determination. They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks

of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.* at 463.

A review of the facts provided in Section II.A. herein summarizing the six cases before this Court demonstrate that all the *Grinnell* factors weigh in favor of preliminary approval the Settlement Stipulation.  Wage and hour class action matters are very complex.  The expense and duration of this litigation has already been demonstrated as discussed above.  The Named Plaintiffs and Class Members informed of resolution to date have provided positive feedback regarding the results.  This is especially true given the loss of the *Bell* trial and the appellate developments in *Ross* and *Cuevas.*  These cases have been litigated for close to four years with extensive discovery.  There are abundant risks in establishing liability as demonstrated by the *Bell* trial, and the pending appeals in *Ross* and *Cuevas.*  Establishing damages in misclassification cases also involve risks given the voluminous regulations providing definitions (some of which are contradictory in nature).  Regarding off-the-clock claims, the amount of time at issue is suspect since it is based on memory alone.  Maintaining a class action through trial for off-the-clock and misclassification claims creates issues as well.  This includes consistency among witness testimony to warrant continued class treatment regarding their job duties and off-the-clock experiences.  Here, Citizens is a significantly large Defendant.  They would be able to withstand a judgment in a greater amount.  The settlement amount fits well within the range that is considered reasonable given the circumstances.  This includes the loss in *Bell* which may occur again in other trials, and the arguably hostile approach taken by the Supreme Court toward Rule 23 class actions.  Given these factors, the average payout of close to $2000 per ABM class member and $850 per hourly class member is significant.

**B.     Preliminary Certification of the *Cuevas* and *Watson* Rule 23 Classes is Appropriate:**

As previously stated, this Motion addresses four Rule 23 class claims consolidated before this Court.  Since *Ross* and *Lyons* have already been certified, there is no need for the Court to grant conditional certification for these classes in order to facilitate the Settlement Stipulation.  For purposes of granting preliminary approval of the Settlement Stipulation, the Plaintiffs are asking this Court to grant conditional Rule 23(b)(3) class certification for the *Cuevas* and *Watson* matters.  This Court had granted Rule 23 certification for *Cuevas* prior to the Second Circuit vacating and remanding the matter for further consideration.  The Second Circuit's decision should not cause this Court concern.  It clearly stated that it was not holding that certification was not possible.  Instead, it just sought additional clarification/discussion from this Court regarding the body of evidence that was presented by the Defendants.  The Rule 23 analysis in *Watson* would mirror the one undertaken by this Court in *Cuevas* since the class members and their claims are identical.

When faced with a proposed class settlement, courts first examine whether the settlement class is certifiable.  *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 180 (W.D.N.Y. 2005).  The Court should now grant conditional certification of the *Cuevas* and *Watson* Rule 23 classes because all of the certification requirements for settlement purposes are met, and Defendants consent to certification for purposes of settlement, but do not concede thereby that any of the cases were appropriate for class treatment for litigation purposes.

In order to obtain class certification, the movant must demonstrate that Rule 23(a)'s four requisites and at least one part of Rule 23(b) are met.  *See In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d. Cir. 2006).  Like *Ross* and *Lyons*, in *Cuevas* and *Watson*, the Plaintiffs are seeking certification under Rule 23(b)(3).

*1.     Rule 23(a)(1) Numerosity has Been Met:*

"[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2nd Cir. 1995). "The plaintiff is required to "show some evidence or reasonably estimate the number of class members." *Pecere v. Empire Blue Cross & Blue Shield*, 194 F.R.D. 66, 70 (E.D.N.Y. 2001). The Defendants have identified over 800 putative class members in *Cuevas* and over 800 in *Watson*. Plaintiffs has easily meet the numerosity requirement under Rule 23(a)(1).

### 2.   Rule 23(a)(2) Commonality has Been Met:

The commonality "requirement is liberally construed; the question is whether there is a unifying thread among the claims alleged by members of the class." *Hart*, 2010 WL 5297221, at *6. New York courts overseeing NYLL misclassification lawsuits have found that the commonality requirement is usually satisfied. Even in light of *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011), Plaintiffs are able to meet this requirement. The Plaintiff Cuevas has presented the same evidence regarding ABMs. All ABMs are subject to the same corporate policies and procedures (including detailed job descriptions, expectations, and training materials). They all share the same common legal theory and claim for overtime damages in that Defendants required them to work in excess of forty hours per week without overtime compensation as required under the NYLL.

These factors mirror numerous other cases from districts in New York finding that commonality exists. *See Torres v. Gristede's Operating Corp.*, 2006 WL 2819730, at *14 (S.D.N.Y. Sept. 9, 2006) (held management positions were all subject to the same corporate policies and practices and shared a common allegation that they were required to work in excess of forty hours per week); *Noble v. 93 Univ. Place Corp.,* 224 F.R.D. 330, 343 (S.D.N.Y.2004) (holding that the commonality requirement was satisfied where all potential class members are alleged to have been harmed by a common practice,[12] *i.e.,* defendants' failure to adequately compensate employees for overtime hours, and the legal theory set forth in plaintiffs' complaint

---

[12]      This is the same language as used in *Dukes* when addressing commonality.

18

is common to all class members, *i.e.,* this alleged failure to pay overtime violates New York's labor law).

Under these principles, and for conditional certification for settlement approval, the *Cuevas* and *Watson* Plaintiffs satisfy the commonality requirement.  Plaintiffs share all, and not just one, of the same questions of law and fact as the putative class.  In particular, the Plaintiffs lawsuit challenges Defendants' common practice of classifying all ABMs as overtime-exempt under the NYLL and Pennsylvania's wage laws.  Regarding the question of law, have Defendants met their burden of proof in establishing that all ABMs are exempt from overtime under the respective state laws?  Regarding the question of fact, what are the ABMs' primary job duties, and do they permit an exemption?  The existence of these two issues is sufficient to meet the commonality requirement.

### 3.      *Rule 23(a)(3) Typicality has Been Met:*

Typicality is met "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997).  The plaintiff's claims do not have to be identical to those of the members of the putative class, so long as "the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff[s'] claim as to that of other members of the proposed class."  *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d. Cir. 1999).

In *Torres*, the court found that where the class representatives allege that they were not paid overtime in violation of NYLL and where "the same legal and factual claims are being made for each individual class member ... the typicality requirement is satisfied."  *Torres*, 2006 WL 2819730, at *14 (quoting *Mascol v. E & L Transps., Inc.*, 2005 U.S. Dist. LEXIS 32634, at *17).  Once again, the same factors exist for the *Cuevas* and *Watson* classes as their respective class representatives.  The ABMs in both classes are subject to the same alleged illegal policy: misclassification under the respective state's wage and hour laws.  All ABMs worked at

Defendants' Bank branches in New York or Pennsylvania, were subject to the same alleged misclassification, and were all denied overtime wages.

> **4.      *Rule 23(a)(4) Adequacy has Been Met:***

"The adequacy requirement exists to ensure that the named representatives will 'have an interest in vigorously pursuing the claims of the class, and ... have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys. of N.Y.*, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Penney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d. Cir. 2006)).  Two standards dictate whether the movant has fulfilled the adequacy of representation requirement: (1) class counsel must be qualified; and (2) class members must not have interests that are antagonistic to each other.  *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291-292 (2d. Cir. 1992).

Here, Rule 23(a)(4)'s adequacy requirement is satisfied.  Plaintiffs Cuevas and Watson do not have interests that are antagonistic to other respective putative class members.  Rather, the Plaintiffs and the class members all share a common interest in seeking the recovery of lost overtime wages.

As discussed in the following section, proposed class counsel Donelon, P.C. and Winebrake & Santillo, LLC are qualified, experienced, and more than able to conduct this litigation on behalf of the putative class.

> **5.      *Rule 23(b)(3) Requirements Have Been Met:***

Once Rule 23(a) is satisfied, the movant must satisfy one part of Rule 23(b).  Here, Plaintiffs seek class certification under Rule 23(b)(3), which provides:

> A class action may be maintained if . . . (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against

20

> class members; (C) the desirability or undesirability of
> concentrating the litigation of the claims in the particular forum;
> and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  The above requirements are commonly referred to as "predominance"

and "superiority."

### a.    *Common Issues Predominate:*

Predominance exists when "questions of law or fact common to class members

predominate over any questions affecting only individual members..."  Rule 23(b)(3).  To

establish predominance, the plaintiffs must demonstrate that "the issues in the class action that

are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over

those issues that are subject only to individualized proof."  *In re Visa Check/MasterMoney*

*Antitrust Litig.,* 280 F.3d 124, 136 (2d. Cir. 2001) (internal quotation marks and citation

omitted).  The fact that individualized damage calculations might be required does not alter this

analysis.  Courts "focus on the liability issue ... and if the liability issue is common to the class,

common questions are held to predominate over individual questions."  *Hart v. Rick's Cabaret*

*Int'l Inc.*, 2010 WL 5297221, at *7 (S.D.N.Y. 2010) (quoting *Dura-Bilt Corp. v. Chase*

*Manhattan Corp.,* 89 F.R.D. 87, 93 (S.D.N.Y. 1981)).

It is clear that the same legal theory, claims, defenses, and factors to be examined will

predominate over the ABMs' claims for overtime.  All ABMs are claiming overtime is owed.  All

will be subject to Defendants' affirmative defense that ABMs are exempt from overtime.  If each

class member brought their claims individually, they would all be litigating these same legal and

factual questions.

The same legal issue applies to all ABMs: whether Defendants can fulfill their burden of

proving ABMs are exempt from overtime under?  The same factual issues will arise when

examining the exemption factors.  This applies across the board to all the class members,

whether as a class or individually.  In determining whether an employee meets either

exemption, the main focus will reside on their "primary duty."  All of this will predominate over

21

any individual issues that might exist.   There will be "common answers" to these common questions. *Dukes*, 131 S.Ct. at 2551.  Defendants implemented a companywide policy governing most aspects of the ABMs' job duties.

Misclassification claims under the NYLL are usually found to meet the predominance requirement, and are routinely certified in New York district courts. *See In Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 156-64 (S.D.N.Y. 2008) (the court certified a class of over 270 assistant store managers notwithstanding defendant's argument "that 'individual issues predominate' because 'the duties and responsibilities of [assistant managers] varied . . . in ways that bear upon an analysis of whether or not management was the "primary duty" of individual [assistant managers]'"); *Torres*, 2006 WL 2819730, at *16 (court reached the same conclusion regarding predominance when the employees were alleging misclassification and denial of overtime under the NYLL);  *Noble v. 93 Univ. Place Corp.,* 224 F.R.D. at 345 (predominance found where "issues that are subject to generalized proof predominate over those issues premised on individualized findings"); *Ansoumana,* 201 F.R.D. at 86, 89 (finding predominance where central issues were whether plaintiffs were properly categorized as exempt independent contractors and the consequences of the resolution of that issue in relation to minimum wage); *Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 373 (S.D.N.Y.2007) (finding that common question of whether class members "were supposed to be paid the minimum wage as a matter of law and were not" is "about the most perfect question[ ] for class treatment").

### b.    A Class Action is Superior to Other Methods:

In determining whether the superiority requirement of Rule 23(b)(3) has been met, the Court should consider, among other things, the interest of the members of the class "in individually controlling the prosecution or defense of separate actions" and "the likely difficulties in managing a class action." Fed.R.Civ.P. 23(b).  Factors that militate in favor of finding that a class action is the best method of adjudicating the claims of class members include: (1) the fact that the value of each individual claim is small compared to the possible

costs associated with pursuing it; (2) the assumed socioeconomic status of the proposed class members; and (3) the fact that members of the putative class who currently work for the defendants may be reluctant to pursue any claims against the source of their current income. *Hart*, 2010 WL 5297221, at *7.  Applying these factors, it becomes clear that Rule 23(b)(3)'s superiority requirement is satisfied here.  The value of each class member's individual claim is small compared to the class as a whole.  Class members are not of the means to pay an attorney to pursue the value of these claims on their own.  Finally, numerous class members are current employees of the Defendants, and therefore, would be hesitant to bring such claims on an individual basis.

Also, federal courts will be inundated with hundreds of individual lawsuits where ABMs are all asserting the same claims, and facing the same defense.  This would inevitably lead to varying and inconsistent rulings.  First, there is really no need to tailor trial tactics since all ABMs are making the exact same claim.  Second, Rule 23(b)(3)(B) requires courts to consider "the extent and nature of any litigation concerning the controversy already begun by" class members.  To the parties' knowledge, no other litigation has been initiated by any member of the putative class regarding the NYLL claims at issue herein.  Third, Rule 23(b)(3)(C) requires the court to consider the desirability of "concentrating the litigation of the claims in a particular forum."  Fed.R.Civ.P. 23(b)(3)(C).  Here, concentration of all claims in the Eastern District of New York for resolution is both efficient and desirable for obvious reasons.  Fourth, Rule 23(b)(3)(D) requires the Court to consider any "likely difficulties in managing the class action." Fed.R.Civ.P. 23(b)(3)(D).  Here, there are no difficulties in managing the resolution of the Settlement Stipulation before one court.

**C.    Approval of the Settlement for the FLSA Collective Classes is Appropriate:**

Three of the consolidated cases (*Ross, Bell* and *Martin*) involve collective actions under § 216(b) of the FLSA whereby notice was sent and the class members are identified.   In determining whether to approve a settlement as being fair, just and reasonable, the Court must

consider whether the proposed settlement was fairly and honestly negotiated; whether serious

questions of law and fact exist which place the ultimate outcome of the litigation in doubt;

whether the value of an immediate recovery outweighs the mere possibility of future relief after

protracted and expensive litigation; and the judgment of the parties that the settlement is fair

and reasonable. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).

 Courts approve FLSA settlements when they are reached as a result of contested

litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d

1350, 1353 n.8 (11th Cir. 1982). Typically, courts regard the adversarial nature of a litigated

FLSA case to be an adequate indicator of the fairness of the settlement. *Id.* at 1353-54. If the

proposed settlement reflects a reasonable compromise over contested issues, the court should

approve the settlement. *Id.* at 1354; *see also Manning v. N.Y. Univ.,* No. 98 Civ. 3300(NRB),

2001 WL 963982, at *12-13 (S.D.N.Y. Aug. 22, 2001) (recognizing that the Supreme Court has

allowed an FLSA settlement for unpaid wages or overtime pursuant to a judicially-supervised

stipulated settlement); *Sampaio v. Boulder Rock Creek Developers, Inc.,* No. 07- CV-153, 2007

U.S. Dist. LEXIS 66013, at *3 (E.D.N.Y. Sept. 6, 2007) (same).

 In the instant case, it is clear that the proposed settlement is fair, just and reasonable.

First, the settlement was reached after arms-length negotiation between the parties during

mediation facilitated by an experienced independent mediator. There was no collusion between

the parties. Second, for all the reasons set forth above warranting the Rule 23 settlement under

the *Grinnell* factors, the FLSA claims should be considered fair, just and reasonable.

**D.      Plaintiffs' Counsel Should be Appointed Class Counsel:**

 Donelon, P.C. and Winebrake & Santillo, LLC were approved once before by this Court as

class counsel in the *Cuevas* matter. In addition, the same firms were appointed by two other

federal judges as class counsel in the similar *Ross* and *Lyons* Rule 23 class actions. For the same

reasons this Court appointed counsel in its first opinion, it should do the same again.

**E.    The Proposed Class Notices are Appropriate:**

The Notice Forms, which are attached to the Settlement Stipulation as Exhibits A-E, clearly provide Class Members with the following:  (a) a description of their Class; (b) a description of their litigation; (c) a description of the proposed settlement and of the scope of the release; (d) the identification of Class Counsel; (e) disclosure of Class Counsel's anticipated request for an award of attorneys' fees, costs, and expenses; (f) an explanation of Class Members' right to be excluded from the settlement, the consequences of exclusion, and their right to object (for the *Ross, Cuevas, Lyons* and *Watson* Rule 23 class members); (g) an explanation of the procedure and deadline for filing exclusion requests; (h) an explanation of the procedure and deadline for filing objections to the settlement; (i) their right to obtain their own counsel, and (j) an announcement of the time and location of the final approval hearing.

The above-described Notice Forms and notice process easily fulfills Rule 23's notice requirements.  Such individualized mailing has been recognized as the best notice that can practicably be given to absent class members.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974); *see also Grunin v. International House of Pancakes*, 513 F.2d 114, 121-22 (8th Cir. 1975).

WHEREFORE, the Parties respectfully request that this Court enter the order (courtesy copy to be sent to chambers): (1) granting preliminary approval of the Global Settlement Stipulation; (2) provisionally certifying the proposed settlement classes under Rule 23(b)(3) in the *Cuevas* matter and *Watson v. Citizens Bank of Pennsylvania*; (3) appointing Donelon, P.C. and Winebrake & Santillo, L.L.C. as class counsel over all the consolidated cases; (4) appointing Alberonys Cuevas as class representative in *Cuevas* and Christine Watson as class representative in *Watson*; (5) approving the proposed notices to the class members attached as Exhibits A-E to the Settlement Stipulation; and (6) set a date for a fairness hearing and for final approval.

Date:  October 3, 2013

Peter Winebrake, E.D.N.Y. #PW0426
WINEBRAKE & SANTILLO, LLC
Twining Office Center, Suite 211
715 Twining Road
Dresher, PA 19025
Phone:  (215) 884-2491
Fax: (215) 884-2492
Email: pwinebrake@winebrakelaw.com

/s/ Brendan J. Donelon
Brendan J. Donelon (admitted *pro hac vice*)
DONELON, P.C.
420 Nichols Rd., Ste. 420
Kansas City, Missouri 64112
Phone:  (816) 221-7100
Fax:    (816) 709-1044
Email:  brendan@donelonpc.com

*Attorneys for Plaintiffs*

**Certificate of Service**

I hereby certify that a true and correct copy of the above was sent on October 3, 2013 pursuant to the service requirements of the ECF/CM for the Northern District of Illinois to the following:

Mark W. Batten
**Proskauer Rose, L.L.P.**
One International Place
Boston, MA 02110-2600
Phone: 617.526.9850
Fax: 617.526.9899
mbatten@proskauer.com

Elise M. Bloom
**Proskauer Rose, L.L.P.**
Eleven Times Square
New York, NY 10036-8299
(212) 969-3410
ebloom@proskauer.com

**ATTORNEYS FOR DEFENDANTS**